Good morning. May it please the Court. My client, the petitioner, is an applicant for admission to the USA. She is a native and citizen of Mexico. She is married to a U.S. citizen and would otherwise be admissible or allowed to return and become a legal resident of this country but for the ground of an admissibility at issue here today. An immigration judge found that she was inadmissible because she was a passenger in an automobile driven by her husband and also with her father-in-law in which was found an illegal alien or undocumented immigrant in the trunk of the car. That person had no right to enter the USA. And the petitioner knew that the undocumented alien was in the trunk but did not assist or aid or vet that alien to come to the country. JUDGE LAKE That's the question. Why in your view would a reasonable fact finder be compelled to find that she did not assist when she testified that she was there to be inside the car? And from that, one can reasonably infer that her presence normalized the appearance of traveling across the border at 4.30 or 5 o'clock in the morning. That's true, Your Honor. But I guess what would be unnormal about a car with two people traveling? MS. COLEMAN Well, you know, lots of things could be unnormal. My question is very focused. And it's why in view of that and in view of that concession of hers, there's no question she knew that the alien was in the car, shouldn't have been there, and she had a choice herself, either to go or to walk across the border. And she said she was there just to be in the car. Why would a reasonable fact finder be compelled to find that that was not assistance? JUDGE LEBEN I think a reasonable fact finder could, based on the record of this case, see that she was the wife of the driver. They lived in California. They were returning  MS. COLEMAN I am not quarreling with you. A reasonable fact finder could have found that. But why is a reasonable fact finder compelled to, given her statement that she was there, to be there? JUDGE LEBEN Well, to be there, but to be there for what purpose? MS. COLEMAN To hopefully get waved through. JUDGE LEBEN True, but I think that her presence was just to return to this country. And under the Angwin case, which as counsel points out is not directly on point, what was the overt act? What was the aiding? What was the abetting? What was the encouragement in this case? MS. COLEMAN Being in the car so that they would get waved through. JUDGE LEBEN I think that assumes that just being there, that is somehow going to make it normal or that somehow she would, as the government says, allay suspicion. But I think it's just as likely that having her there, not a professional alien smuggler, is just as likely that that would have drawn suspicion had they looked in her eyes or looked at her. There's nothing in the record that says that they saw her, she was not nervous or she was nervous. But it's just as likely, I think, that her presence there would have drawn suspicion from the inspector. And with respect to the question of silence, she did not say anything, nor does the record show that she was asked anything. There was nothing in the form I-213, the government's  JUDGE LEBEN Did she present her parole documents to the border inspector? MS. COLEMAN Yes, sir. That's what the I-213 shows. And I think normally they might ask to declare or there's no indication that question was asked of her. JUDGE LEBEN From those documents, can you tell that they were a family? MS. COLEMAN Normally, I think you could, Your Honor, because she was married to the driver. And I think probably there's no indication on the document that she was the spouse of the driver. It doesn't say spouse of the driver. JUDGE LEBEN No, but if you look at all the documents that were presented to the border crossing guard. MS. COLEMAN I think you would see from the last major. So I don't think you can say that she was. Yes, she didn't speak. But at the same time, there was no time when she would have been required to speak. JUDGE LEBEN What do you think she meant when she testified that when she was asked, well, how are you aiding or how are you helping? And I think at one point along the way she said, well, my presence or just being there. MS. COLEMAN I'm not sure. I'm not sure that she said that, Your Honor, or being there. JUDGE LEBEN Let's be hearing. MS. COLEMAN Well, she said, what assistance did you provide that person? Well, to be inside the car. That's what she said. JUDGE LEBEN I guess I guess that's the. MS. COLEMAN What does she mean by that from your perspective? JUDGE LEBEN I think that just being her being her being with her husband, her husband, her husband was going back, going back to his home. MS. COLEMAN That's helping, isn't it? JUDGE LEBEN Well, no, but helping him to helping the that's being a wife or going back with going back, you know, being with your husband. I don't think that was that may have been helping him or helping him to into the country. But it wasn't helping the it wasn't helping the the other alien. MS. COLEMAN Whose burden was it here? JUDGE LEBEN I agree that it would be the the immigration judge appears to have made an error. And I also followed that or adopted that as well. I agree that because the alien is an arriving alien and she is asking for admission, she must show that that she is admissible to this country. And I just think you're under the surprise and there's no case law on this on this issue is the is merely being a passenger sufficient. I think the closest decision in this circuit is the angling case. And the interesting thing is that in the normal event, the issue is knowledge. So you the question is whether from presence in the car you could infer knowledge that there was an illegal alien in the vehicle. But that's not the question here. She knew that the illegal alien was in the car. And she said she went along to be there. And she said, how did in response to the question, how did you help that person enter the U.S.? She says, by being in the company of my car and a husband and crossing over. But but but I guess the it begs that it then begs another question. How did that how did she, even though she may have said that and that that how did that aid a bed or encourage the other the other alien to enter the U.S. in violation of law? And I just remind the court that this grounded in this ability would be a permanent bar. So therefore, there is no waiver as another context. So if the court is to affirm the whole firm, the decision of the immigration judge that this person is inadmissible, that will be a bar for all of her life. And that I think just axiomatically, the statutes are are construed in favor of the alien. I think in this case, it's not it's not totally clear. Is enough to render an alien inadmissible on this ground. Thank you. Thank you. Let me just ask one question real quick. What happened to the father to the father in law and to the husband when they prosecute the husband? The U.S. citizen was not prosecuted. The car was confiscated. And he's still I still see him regularly in this case. The petitioner is still in Mexico waiting to be granted admission. And the father was was placed into removal proceedings. And I was the attorney in that case. The father in law was granted granted cancellation of removal based on his long term residence. The petition in this case, unfortunately, does not have the requisite seven years of lawful time in this country to apply for a waiver or a pardon. So, therefore, if she is found inadmissible, that's a permanent bar. Thank you. OK. Good morning. The petitioner falls within the section of inadmissibility concerning encouraging and inducing, assisting, abetting or aiding any other alien to enter or try to enter the United States in violation of law. As you already heard, there were some errors, I guess, by the immigration judge and opposing counsel in his brief about the standards that apply to this case. But, in fact, the applicable standards are extremely strong in favor of the government. Because the petitioner was stopped at the Mexican side of the border, she bears the burden. And that burden is to prove that she is, quote, clearly and beyond doubt entitled to be admitted. That's 8 U.S.C. 1229 A.C. 2. Beyond that, a decision that an alien is not eligible for admission to the United States is conclusive unless it is manifestly contrary to law. That's 8 U.S.C. 1252 B.4. We would argue here that the decision of the immigration judge was not manifestly contrary to law, and, therefore, that this Court should sustain. As you heard, the passenger was – excuse me, the petitioner was a passenger in a car with her husband and father-in-law. The car was stopped and inspected at the border, and there was an illegal alien in the trunk. According to the petitioner herself, she knew the night before that her husband and father-in-law were going to attempt the smuggling. That's A.R. 5051 and 78. She testified that she had misgivings, but she testified also, as we've said, that she was there to be in the car. She got in the car. She went with him. She also specifically said in her testimony that she was not forced to do so. This is A.R. 55 to 58. She didn't leave the car, although she could have crossed the border on foot. She was actually present when the smuggling was attempted, and she was silent about the attempt when they were interacting with the inspectors at the border before the alien was discovered in the trunk. That's A.R. 78. Now, in the brief, petitioner relies heavily on the Angwin case, but I think the petitioner's reliance there is misplaced. Angwin is a criminal case. In that case, the government had the burden, and it had to prove guilt beyond a reasonable doubt. So this, I mean, these cases in terms of the burden are two ends of the spectrum. Now, in Angwin, the majority actually says at one point that presence and knowledge, quote, might not, unquote, might not in sufficient evidence. This is of 271 F. 3rd at 806. Now, if they might not, then again, they might. Okay. This is in a criminal case with the government having to bear the burden, guilt beyond a reasonable doubt. Now, given the different burden in the instant case where the petitioner has to show that she clearly and beyond a doubt is entitled to enter, Angwin shows that there's at least a doubt here. And petitioner, for that reason, just can't carry her heavy burden, and this supports the government's conclusion, the immigration judge's finding, that she was inadmissible. Now, there's also an issue that was raised in the brief about whether the Board improperly affirmed without opinion in this case. The regs that relate to the procedure for affirming without opinion are at 8 CFR Section 3.187. Is that argument squarely foreclosed by Hulk and Koresh? Yes, Your Honor. We would definitely agree with that. Anything further? No, Your Honor. I think that covers our argument. Let me ask just one question. Has the Board addressed this particular issue? I didn't find a case that was exactly on point with the facts. But I think that, again, the statute of limitations. I'm not certain of that, Your Honor, that I could answer that question. Is this one of those cases, if there isn't precedent, where they should do an opinion? Well, I think if you take the position that this isn't covered by Hulk and Koresh, then I guess what I would say is this. Going to the regs, they do provide for several different options. If the case is squarely controlled by precedent and does not involve a novel fact situation, that's one situation. But that's not the only possible area something could fall into and still be appropriate for an AWO. The other option would be that the factual and legal questions raised on appeal are so insubstantial that a three-member review is not warranted. I don't think we meet those tests. Well, our argument would be that if you reach this issue at all, that we do meet the second prong of that test. In this case, given the standards, given the broad wording of the statute, the inadmissibility statute, encouraging, inducing, assisting, abetting, and aiding, it's very broad. It seems to cover different degrees of helpfulness or allowing something to happen. So you've got the statutory language and you've got these really very favorable to the government standards of needing to show beyond doubt being entitled to admit it. And also the standard for the court's review of manifestly contrary to law, we would say given all those things here, it was not error for the Board to feel that a three-judge panel was not necessary in this case. I hope that answers your question. Well, you've attempted to answer it. Is there anything else, Your Honors? I don't think so. Mr. Groff? I'll just say that the government did try to find – did – there is no Board decision on this that it really should be because it's an incredibly important area, not only for this type of case, but also for other cases that involved cutoff of the seven years and other areas. But the government did try to find a case – I think it was a Second Circuit case recited in the brief. I believe it was the Guillaume or GUI or something. And they're mentioning about the 250-pound bruiser accompanying the extortioner or the lookout for someone who's committing a crime. But I don't think that in this case the petitioner was the lookout because she was – there's no evidence of that. And I just think that this case is – the conduct here or the nonconduct here is much less than the bruiser or the lookout. And that's why I think based on the totality of circumstances, she is still admissible even under the clearly and beyond doubt standard. And I think that it's manifestly contrary to law because of the – because, again, there is no – there is no overt act. Thank you. Thank you, Mr. Rao. I'll thank you, counsel. The matter just argued will be submitted and we'll hear argument from Rosa Lopez.
judges: B. Fletcher, Rymer, Paez